UNITED STATES *v.* LAURENTIDE PAPER CO. (No. 1368).[1]

CANADIAN WOOD PULP AND NEWS PRINT PAPER.

The question is whether there was by a Canadian rule or regulation any prohibition or restriction of exportation either by contractual relation or otherwise, directly or indirectly, applicable to this merchandise; whether the act of July 26, 1911, controls. Section 13 of the Canadian woods and forest regulations did contain such a prohibition, and, so far as the record discloses, it remained in force until December 31, 1912, when, by an order in council, the prohibition was not to be enforced and provision was made that the prohibition was to be deemed inoperative from May 1, 1911. The merchandise here, as the record shows, was cut from the lands described in that order and was manufactured, in part at least, prior to December 31, 1912. Our statute has its own field of operation, and this operation is not to be defeated by another authority. Under our statute and under the facts shown here this wood pulp and news print paper were not entitled to free entry.

United States Court of Customs Appeals, February 12, 1915

APPEAL from Board of United States General Appraisers, Abstract 34940 (T. D. 34219).

[Reversed.]

*Bert Hanson*, Assistant Attorney General, for the United States.
*Allan R. Brown* for appellee.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:
The merchandise the subject of importation in this case consists of certain wood pulp and news print paper exported from the Province of Quebec, Canada, into the United States. It was assessed at the ports of entry under paragraph 409 of the tariff act of 1909 at three-sixteenths of 1 cent per pound, and for the reason that the Province of Quebec had prohibited the free exportation of wood from which the wood pulp and news print paper were manufactured an additional one-tenth of 1 cent per pound.

---

[1] Reported in T. D. 35157 (28 Treas. Dec., 256).

The evidence shows that the wood pulp and news print paper imported were made from wood grown and cut on Crown lands in the Province of Quebec; that section 13 of the Canadian woods and forest regulations of April 26, 1910, contained a prohibition and restriction against the exportation of such wood. The evidence further shows that in the winter of 1911 and 1912 the wood from which the product imported was manufactured was cut from these Crown lands; that it was run down streams in the summer and manufactured into wood pulp and into news print paper during the winter of 1912 and 1913. The precise time at which it was manufactured is not shown as to all the material, although the testimony of the importers' witness is to the effect that the wood was ground up into paper (pulp?) probably all since the 1st of December, 1912.

The importers duly protested against the assessment as made by the collector, and their protest having been sustained the case is brought here for review.

There are numerous assignments of error, some relating to the exclusion of testimony offered on cross-examination and others going directly to the merits of the case, error being assigned on the order of the board sustaining the protests and specifically in holding that the merchandise was manufactured from wood on which there was no prohibition or restriction of exportation either by contractual relation or otherwise, directly or indirectly. The latter assignment of error presents the meritorious issue in the case.

As before stated, under section 13 of the Canadian woods and forest regulations, prohibition against the exportation of wood cut on Crown lands was in force. This prohibition remained in force, so far as this record discloses, up to the 31st of December, 1912. At that date an order was entered by the lieutenant governor in council which provided that article 13 of the woods and forest regulations "shall not apply to timber cut from the 1st day of May, 1911, and which will be cut thereafter on the timber limits hereinafter described; and that all pulp wood cut from the 1st day of May, 1911, or which will be cut hereafter on the said timber limits, or the paper, paper board, or wood pulp manufactured from the wood cut on such timber limits, may be exported free of any export duty, or any other charge of any kind whatsoever, or any prohibition or restriction in any wise relating to such exportation." The timber limits described covered those from which the timber, from which the importations in question were manufactured, was cut.

There was evidence showing that the power to enter an order suspending the provisions of article 13 of the woods and forest regulations was vested in the lieutenant governor in council, and it was testified by an expert witness, an attorney of Canada, that he had power to make his order retroactive.

Accepting this testimony as establishing the facts claimed and assuming the entire good faith of the transaction, the question is still left as to whether the importers have made a case which overcomes the presumption of correctness which attaches to the assessment of the collector. The claim of the importers is that under the terms of section 2 of the act of July 26, 1911, the importation in question is entitled to free entry.

This section provides for the free entry of pulp wood, pulp, and news print paper of the quality here in question "on the condition precedent that no export duty, export license fee, or other export charge of any kind whatsoever (whether in the form of additional charge or license fee or otherwise), or any prohibition or restriction in any way of the exportation (whether by law, order, regulation, contractual relation, or otherwise, directly or indirectly), *shall have been imposed* upon such paper, board, or wood pulp, or the wood used in the manufacture of such paper, board, or wood pulp, or the wood pulp used in the manufacture of such paper or board."

This section was construed by this court in Cliff Paper Co. *v.* United States (4 Ct. Cust. Appls., 186; T. D. 33435), and it was there said:

> It is thus provided by the condition precedent that free entry into this country shall be had by Canadian paper or wood pulp only when the given paper and wood pulp, and the wood from which they were manufactured, are entitled to exportation from Canada free of any export charge or prohibition or restriction of exportation.

This case established the rule that the question in each case is whether the particular importation is itself subject to no prohibition or restriction of exportation and that the wood from which it is manufactured is alike free. It would seem that a fair reading of the condition itself would establish that freedom from restriction upon the right to export wood must be continuous from the time it is cut from the stump and becomes wood up to and including the time of its manufacture into an advanced product. If this were not so, the reasonable and logical time and opportunity for marketing the product as wood may have passed by and the restriction may have worked out a result in direct opposition to the purpose of the act.

The purpose of this restriction or limitation on the free importation of wood and paper provided for in this section is too clear to require extended comment. It obviously was an attempt to make possible the importation from Canada of pulp wood in the raw state for the use of our own manufacturers. It would not at all answer this purpose to say that at the time of exportation of the product in its manufactured state as wood pulp or news print paper the wood from which they had been manufactured would have been admitted free had it up to that time remained in its condition as wood, and it would certainly impair very materially the advantages to be derived from such

freedom from restriction if at any time after it was cut from the stump it was subject, for any period whatever, to restrictions or prohibitions of exportation.

But the question here presented is still more narrow. It is whether it is sufficient to answer this requirement that there shall be no prohibition or restriction of exportation of wood or export duty chargeable against such wood from which the wood pulp has been manufactured existing at the very time of the exportation of such advanced product, or whether the freedom or restraint of exportation must have existed at least at the time when the wood was manufactured into wood pulp. Upon this question there would seem to be no room for doubt. Assuming the power of the lieutenant governor in council to make an order relating to timber limits retroactive as it affects the rights of the licensee as between itself and the Dominion of Canada and its Provinces, it is clear that he has no power to defeat by such an order the purpose and letter of the condition to free entry which our own statute imposes. The time has elapsed when a right to free exportation can for an instant be vested in the owner of this pulp wood. It is apparent from this record that as early as the 1st of December, 1912, the manufacture of this particular wood was entered upon. To what extent it was manufactured before the 31st of December the record fails to show, and as the burden of proof is upon the importers, who attack the assessment, and as we have no means of distinguishing between pulp and print paper thereafter manufactured from that which was manufactured during the month of December, we must treat each alike, and it follows that at the time of the manufacture of a portion at least of this product there was in fact an absolute prohibition against the exportation from Canada of wood in the form in which it was cut from the land. The fact that subsequently the empty right to export wood, which is no longer in existence, but which has become something else, is given does not meet the condition in our law. This consideration is alone sufficient to show the error in the result reached.

It is due to the Board of General Appraisers to state that this point appears not to have been pressed to their attention. The decision of the board must, however, be *reversed*.