UNITED STATES v. MURPHY & Co. (No. 1983).[1]

CONTAINERS OF HYDROSULPHITE OF SODA.

Hydrosulphite of soda was imported packed in tin containers about the size of an ordinary barrel, some of the containers being packed in close-fitting wooden drums which are fortified by iron, and some of them in barrels or casks, the space between the container and the barrel or cask being packed with straw. · It was shown that it was necessary to protect the merchandise from moisture; that such containers are the usual ones for such merchandise; that they are not heavy, but sufficiently strong for their purpose; and that the contents of only one-fourth of them could be removed without destroying them. As to those whose contents can not be removed without destroying them, the decision of the Board of United States General Appraisers sustaining a protest against the collector's classification as "cylindrical or tubular tanks or vessels," under paragraph 127, tariff act of 1913, and claiming dutiability at the same rate as the merchandise in accordance with paragraph ·R of section 3, is affirmed. As to those whose contents can be removed without destroying them, there being no evidence that they are useless commercially, the presumption of correctness attendant upon the collector's action is not overcome, and the decision of the board sustaining the protest is reversed.

United States Court of Customs Appeals, November 25, 1919.

APPEAL from Board of United States General Appraisers, Abstract 43043.

[Modified.]

*Bert Hanson*, Assistant Attorney General, for the United States.
*Walden & Webster (Henry J. Webster* of counsel) for appellees.

[Oral argument Oct. 14, 1919, by Mr. Hanson and Mr. Webster.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

The appellees imported into this country a quantity of hydro-sulphite of soda, packed in round tin containers, which in turn were packed in close-fitting wooden drums or in barrels.

The collector assessed duty upon the merchandise at the rate of 15 per cent ad valorem, and this rate is conceded by the importers to be correct. At the same time, however, the collector classified the tin containers as "cylindrical or tubular tanks or vessels, for holding gas, liquids, or other material, whether full or empty," and assessed duty upon them as such at the rate of 20 per cent ad valorem under the provisions of paragraph 127, tariff act of 1913.

The importers protested against the assessment of the containers, claiming for them the same rate of duty borne by their contents, viz, 15 per cent ad valorem, under the rule prescribed by paragraph R of section 3 of the same act.

The two paragraphs thus cited read as follows:

127. Lap-welded, butt-welded, seamed, or jointed iron or steel tubes, pipes, flues, or stays; cylindrical or tubular tanks or vessels, for holding gas, liquids, or other

material, whether full or empty; flexible metal tubing or hose, not specially provided for in this section, whether covered with wire or other material, or otherwise, including any appliances or attachments affixed thereto; welded cylindrical furnaces, tubes or flues made from plate metal, and corrugated, ribbed, or otherwise reenforced against collapsing pressure, and all other iron or steel tubes, finished, not specially provided for in this section, 20 per centum ad valorem.

PAR. R, SEC. 3. That whenever imported merchandise is subject to an ad valorem rate of duty, or to a duty based upon or regulated in any manner by the value thereof, the duty shall be assessed upon the actual market value or wholesale price thereof, at the time of exportation to the United States, in the principal markets of the country from whence exported; that such actual market value shall be held to be the price at which such merchandise is freely offered for sale to all purchasers in said markets, in the usual wholesale quantities, and the price which the seller, shipper, or owner would have received, and was willing to receive, for such merchandise when sold in the ordinary course of trade in the usual wholesale quantities, including the value of all cartons, cases, crates, boxes, sacks, casks, barrels, hogsheads, bottles, jars, demijohns, carboys, and other containers or coverings, whether holding liquids or solids, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States, and if there be used for covering or holding imported merchandise, whether dutiable or free, any unusual article or form designed for use otherwise than in the bona fide transportation of such merchandise to the United States, additional duty shall be levied and collected upon such material or article at the rate to which the same would be subjected if separately imported. That the words "value," or "actual market value," or "wholesale price," whenever used in this act, or in any law relating to the appraisement of imported merchandise, shall be construed to be the actual market value or wholesale price of such, or similar merchandise comparable in value therewith, as defined in this act.

The issue was submitted upon testimony to the Board of General Appraisers, and the protest was sustained. From this decision the Government appeals.

The testimony discloses almost without contradiction that the merchandise is a dry material which must be protected from moisture, otherwise it tends to become lumpy and lose its value; that it is packed in tin containers about the size of an ordinary barrel, and that these are then packed in close-fitting wooden drums which are fortified by iron, or in barrels or casks, in the latter case the lost space between the two vessels being filled with hay or straw; that these are the usual containers of the merchandise; that the tin vessels are not heavy, but are sufficiently strong for their purpose; that some of them are soldered tight and can not be opened without destroying the container, the whole top being cut off in such case; that three-fourths of the present shipment belonged to this class; that the other tin containers had friction covers which could be pried off with a chisel without destroying the containers themselves.

Upon this state of facts the Government contends for the application of the rule of assessment presented in United States *v.* Marx (1 Ct. Cust. Appls., 152; T. D. 31210; United States *v.* Geisenheimer (5 Ct. Cust. Appls., 520; T. D. 36144), and United States *v.* Bene (6 Ct. Cust. Appls., 523; T. D. 36145).

On the other hand, the importers contend for the rule expressed in United States v. Garramone (2 Ct. Cust. Appls., 30; T. D. 31577) and United States v. Braun (2 Ct. Cust. Appls., 57; T. D. 31596).

The Garramone case, supra, relates to such tin cans as are commonly used for holding and preserving fresh tomatoes and tomato sauce, while the Braun case, supra, relates to cylindrical iron drums 31¾ inches high and 22 inches in diameter holding chloride of magnesium. In both cases it appeared that the containers in question must be cut open, and thereby practically destroyed, in order to remove their contents. This consideration led the court to the decision in each case that the containers thus described were not within the purview of paragraph 151, tariff act of 1909 (the predecessor of par. 127, supra), as "cylindrical or tubular tanks or vessels for holding gas, liquids, or other material, whether full or empty," but were dutiable under section 18 (now par. R, supra), at the same rate of duty as their ad valorem contents.

We think that these decisions plainly cover three-fourths of the containers now in question, since the testimony establishes the fact that this proportion of them must be cut open, and thereby practically destroyed, in order to remove their contents. As to the other one-fourth, however, consisting of containers with friction tops which apparently may be pried off without injury to the vessels themselves, while there is no evidence in the record to show that these are ever used again after they are once emptied of their contents, or that they are sold again for any purpose, yet we do not think that the testimony concerning them is sufficiently clear to overcome the force and effect of the collector's assessment. We therefore hold that the decision of the board sustaining the protest in toto should be modified so that it shall apply only to three-fourths of the containers in question, and that as to the remaining one-fourth the protest should be overruled. It is accordingly so ordered.

*Modified.*